UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:08-cv-00502-LJM-TAB |
| JOSEPH A. PENCE, ROBERT J. TREASH JR., | ) ) ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S REQUEST FOR ORAL ARGUMENT ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is defendants', Joseph A. Pence ("Pence") and Robert Treash ("Treash") (collectively, "Defendants"), Motion for Summary Judgment (Dkt. No. 169). Defendants seek summary judgment in their favor as to plaintiff's, PNC Bank, National Association ("PNC Bank"), claims of fraud and conspiracy. *See* Dkt. No. 1. Treash has been dismissed from this action with prejudice, and, accordingly, his Motion for Summary Judgment is **DENIED AS MOOT**. *See* Dkt. No. 187. Therefore, only Pence's Motion for Summary Judgment remains. Also pending is Defendant's Request for Oral Argument on Motion for Summary Judgment ("Request for Argument") (Dkt. No. 189). The Court has considered the parties' arguments, and, for the following reasons, Pence's Motion for Summary Judgment (Dkt. No. 169) is **DENIED in part** and **GRANTED in part**. Defendants' Request for Argument (Dkt. No. 189) is **DENIED**.[1]

---

[1] The Court believes that the voluminous exhibits attached to the parties' briefs on the Motion for Summary Judgment more than adequately provide all necessary information and concludes that further argument is unwarranted.

## I. BACKGROUND

This case is one among of a number of cases involving the collapse of OCMC, Inc. ("OCMC"), an Indiana corporation in the telecommunications industry. The facts of this case are set forth in multiple orders in this litigation, as well as related litigation,[2] so a short fact summary is sufficient for purposes of the Motion for Summary Judgment.

OCMC entered a series of agreements ("Loan Agreements") to borrow money from PNC Bank in the form of a revolving line of credit. Dkt. No. 182 at 20. The funds advanced through the Loan Agreements were secured by a security interest in OCMC's accounts receivable. *Id.* The maximum allowable funding amount was determined by calculating a value of eighty-five percent of the qualified accounts receivable. Dkt. No. 182-49. To arrive at the qualified accounts receivable, certain accounts receivable, designated as "ineligible" under the terms of the Loan Agreements and by PNC Bank's representatives, were subtracted out of the total accounts receivable. Dkt. No. 170-9. OCMC used the funds borrowed under the Loan Agreements to fund its day-to-day operations. Dkt. No. 182 at 6.

As part of the Loan Agreements, OCMC was required to complete and fax to PNC Bank a Borrowing Base Certification ("BBC") each day. Dkt. No. 182 at 20. This certificate was filled out by various OCMC personnel, including Controller Sherri Woiteshek and accounting staff members Erin Ray, Brad Noble, Brandie Boden, among others. *Id.* The parties dispute what role, if any, Pence had in the preparation and transmission of the

---

[2] *See Meridian Fin. Grp., Ltd. v. Pence*, No. 07-CV-995 (S.D. Ind. filed July 31, 2007); *PNC Bank, Nat'l Assoc. v. ICOE, Ltd.*, No. 07-CV-992 (S.D. Ind. filed July 31, 2007); *PNC Bank, Nat'l Assoc. v. OCMC, Inc.*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006); *Blue Frog Mobile NV Inc. v. Navicomm LLC*, No. 06-CV-1215 (S.D. Ind. filed Aug. 10, 2006).

BBCs. *Compare id., with* Dkt. No. 170 at 4. The BBCs included a certification of the qualified accounts receivable and the corresponding amount available for borrowing. *See* Dkt. No. 182-49. As indicated above, the calculations were based on OCMC's reported gross accounts receivable. *Id.* All parties were aware that, due to the nature of OCMC's business, OCMC did not collect one hundred percent of the gross accounts receivable. Dkt. No. 182 at 25.

In addition to daily submissions of the BBCs, PNC Bank's auditors would visit OCMC's office in Carmel, Indiana every sixty to ninety days. *Id.* at 22–23. During the auditors' visits, they would examine OCMC's books, request documents from OCMC's accounting department, and make recommendations to PNC Bank's representatives and OCMC as to which accounts receivable should be deemed ineligible. *Id.* at 23–24. The Loan Agreements gave PNC Bank access to OCMC's financial records, including internal documents used by employees in the accounting department, upon request. Dkt. No. 182-13 at 21.

In late 2005, OCMC acquired three accounts receivable which are the subject of the dispute raised by Pence's Motion for Summary Judgment. In each transaction, OCMC bought "tapes" of call records that it would attempt to bill to end customers. These tapes would contain information about the location and time of the calls, as well as additional information, which OCMC would use to connect each call to a billing address. The first account, referred to by the parties as "Happy Jack," OCMC agreed to pay $220,000 for tapes containing $8.5 million in call records. Dkt. No. 170 at 10. The Happy Jack tapes ultimately generated $34,000 in revenue for OCMC. *Id.* at 11. On the second account, "Net Bill," OCMC recorded $4.31 million in accounts receivable. Dkt. No. 182 at 9. The Net

3

Bill tapes ultimately generated $85,628 in revenue. *Id.* On the third account, "Telliss," OCMC purchased the records for $150,000; declared accounts receivable of $2,363,608; and ultimately collected no revenue. *Id.* at 9–11. In a second transaction with Telliss, OCMC agreed to arrange billing for $1.1 million worth of call records, reported this amount as accounts receivable, and ultimately collected nothing. *Id.* Between Happy Jack, Net Bill, and Telliss (collectively, the "Disputed Accounts"), OCMC declared $16,273,608 in accounts receivable and only collected $119,628 in revenue. The rest of the accounts receivable on the Disputed Accounts were written off as ineligible receivables after 120 days. *Id.*

In May 2006, OCMC became unable to pay its loan obligations to PNC Bank and was forced into receivership. *See PNC Bank, Nat'l Assoc. v. OCMC*, No. 06-CV-755 (S.D. Ind. filed May 11, 2006) ("Receivership Action"). The Court appointed Meridian Financial Group, Ltd. ("Meridian") as OCMC's receiver for the benefit of creditors, PNC Bank and CID Mezzanine Capital, L.P. *See id.* at Dkt. No. 73. Under its authority as receiver, Meridian has taken a number of actions, including settling various legal claims, terminating OCMC's remaining employees, and accepting the resignation of OCMC's officers. *See id.* at Dkt. No. 231. Meridian also filed suit against Defendants and others, former officers and senior employees of OCMC, alleging breach of fiduciary duties. *See Meridian Fin. Grp., Ltd. v. Pence*, No. 07-CV-995 (S.D. Ind. filed July 31, 2007).

PNC Bank filed suit in this Court alleging fraud and civil conspiracy, as well as a cause of action for treble damages under the Indiana Crime Victim's Relief Act. Dkt. No. 1. In support of each claim, PNC Bank contends that, due to the low collectible rates on the Disputed Accounts, OCMC and Defendants should not have declared the Disputed

4

Accounts' receivables, and these invalid receivables induced PNC Bank to loan OCMC money it would not have loaned otherwise. *Id.* Pence, the only remaining defendant, moves for summary judgment on all of PNC Bank's claims. Dkt. No. 169. The Court adds additional facts below as necessary.

## II.  STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec.*

5

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III.  DISCUSSION

### A.  FRAUD

PNC Bank alleges that OCMC made material misrepresentations on the BBCs to induce PNC Bank to lend it more money than OCMC otherwise would have been entitled to under the loan agreements.  Dkt. No. 1 at ¶¶ 52–55.  PNC Bank further alleges that Pence was aware of the fraud and directed OCMC agents to continue making these misrepresentations.  *Id.* at ¶ 54.  In particular, PNC Bank alleges that material misrepresentations were made as to the collectable amounts to be expected from the Disputed Accounts and that the accounts receivable numbers given to PNC Bank to induce the lending of further funds included significant amounts that OCMC had no expectation of receiving.  Dkt. No. 182 at 9–12.  In effect, PNC Bank accuses OCMC and Pence of obtaining loans based on worthless receivables.  *Id.*  These activities, according to PNC Bank, make Pence liable for fraud.  Dkt. No. 1 at ¶¶ 52–58.

To maintain an action for fraud, a plaintiff must prove that (1) the defendant made a material representation of a past or existing fact; (2) the representation was false; (3) the representation was made with knowledge for reckless ignorance of its falsity; (4) the plaintiff relied upon the representation; and (5) the representation proximately caused the plaintiff's injury.  *Ruse v. Bleeke*, 914 N.E.2d 1, 10 (Ind. Ct. App. 2009).  The representation can be either an affirmative misrepresentation or a failure to disclose a material fact.  *Lawson v. Hale*, 902 N.E.2d 267, 275 (Ind. Ct. App. 2009).  However, a fraud claim may not be based on representations of future conduct, broken promises, or representations of existing intent that are not executed.  *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005).  An officer or employee of a company may be held liable for fraud

by the company when the officer was personally involved in perpetrating the fraud. *See U.S. Schs. of Golf, Inc. v. Biltmore Golf, Inc.*, No. 05-CV-313, 2005 WL 3022005, *9 (S.D. Ind. Nov. 10, 2005) (Hamilton, J.).

As an initial matter, Pence asserts that he cannot be held liable for fraud because there is no evidence that he personally participated in the fraud. Dkt. No. 188 at 7. Generally, a corporate officer is not liable for corporate fraud merely by his status as an officer. *Ind. Civil Rights Comm'n v. Cnty. Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). "However, an officer is personally liable for the torts in which she has participated or which she has authorized or directed." *Id.* PNC Bank has brought forth evidence suggesting that Pence directed Shelli Woiteshek to continue reporting the full accounts receivable for the Disputed Accounts to PNC Bank without disclosing their high dilution rate. *See, e.g.*, Dkt. No. 182-9 at 2, 4, 7; Dkt. No. 182-13 at 13–15. The Court concludes that a genuine issue of material fact exists as to Pence's participation in any fraud that may have taken place.

PNC Bank contends that Pence failed to disclose a material fact, namely the actual collectable receivables of the Disputed Accounts, which he was required to disclose under the terms of the Loan Agreements. In support of this contention, PNC Bank has provided a copy of the Loan Agreements stating that "[e]ach of the receivables shall be a bona fide and valid account representing [ ] bona fide indebtedness." Dkt. No. 182-11 at 1, ¶ 4.15.1. PNC Bank asserts that the Disputed Accounts "should not have been reported . . . at all" because they failed to "meet the contractual requirements" and "OCMC knew that there was no way the [Disputed Accounts] would collect enough money to repay [PNC Bank]." Dkt. No. 182 at 32. Pence contends that the difference between the collectable and

accounts receivable amounts was not a "misrepresentation of a past or existing fact" and that he and OCMC had no duty to disclose the discrepancy. Dkt. No. 170 at 17–23.

In cases where a failure to disclose forms the basis for a fraud claim, mere silence is not actionable absent a legal duty to disclose. *See Choung v. Iemma*, 708 N.E.2d 1, 14 (Ind. Ct. App. 1999). If Pence and OCMC had no duty to disclose the collectible amounts on the Disputed Accounts, the failure to do so cannot constitute a material misrepresentation forming the basis for a fraud claim. Since the parties are in agreement that any legal duty to disclose in this case is based on the contract as expressed in the Loan Agreements, the Court looks to the Loan Agreements to determine whether they contain any language suggesting that OCMC or Pence had a duty to affirmatively represent the collectable amounts on the Disputed Accounts to PNC Bank. In interpreting contractual provisions, courts must seek to ascertain the intent of the parties, and the unambiguous language of the contract is conclusive. *Bank of Am., N.A. v. Ping*, 879 N.E.2d 665, 669–70 (Ind. Ct. App. 2008).

Turning to the language of the Loan Agreements, OCMC's borrowing amount was based on the amount of "Eligible Receivables" included on the BBC and related documentation. Dkt. No. 182-10 at 23, ¶ 2.1. The Loan Agreements define Eligible Receivables as "each Receivable of [OCMC] arising in the ordinary course of [OCMC]'s business and which [PNC Bank], in its reasonable credit judgment, shall deem to be an Eligible Receivable, based on such considerations as [PNC Bank] may from time to time reasonably deem appropriate." *Id.* at 11, ¶ "Eligible Receivables". Accordingly, the Loan Agreements clearly gave PNC Bank the discretion to declare certain accounts receivable as ineligible. *See id.* However, there is no evidence that PNC Bank exercised this

discretion until March 2006, when PNC Bank's auditors reported an agreement with OCMC officials that OCMC would no longer include Happy Jack or Net Bill accounts receivable on the BBCs. Dkt. No. 182-53 at 12. This occurred well after the accounts receivable for the Disputed Accounts had been written off of the BBCs. *Cf. id.*; *see also* Dkt. No. 182 at 38 (noting that the Happy Jack traffic remained on the BBCs until January 2006). The BBCs do not give any other indication that OCMC had an independent duty to take such dilution into account. *See, e.g.*, Dkt. No. 182-49.

PNC Bank contends that the requirement for receivables to be "bona fide and valid account[s] representing a bona fide indebtedness" implies a requirement to disclose substantial differences between the accounts receivable and the actual collection rate. *See* Dkt. No. 182-11 at 1, ¶ 4.15.1. In ordinary meaning, "bona fide" includes an obligation that the representation in question be free of deceit. PNC Bank seeks an interpretation that "bona fide" includes only accounts receivable with a higher collection rate than the Disputed Accounts, while Pence interprets "bona fide" only to require that the accounts receivable in fact exist. Although ambiguity is not created merely because the parties disagree on the contract's interpretation, the Court finds the language of the contract to be ambiguous in this regard, as reasonable people could come to different conclusions about its meaning. *See Singh v. Singh*, 844 N.E.2d 516, 524 (Ind. Ct. App. 2006). Although the Court has an obligation to apply unambiguous contractual language, the ultimate fact finder must construe ambiguous language. *See Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002). Accordingly, the Court concludes that there is a genuine issue of material fact as to whether the accounts receivable of the Disputed Accounts were not "bona fide" such that OCMC had a duty to disclose their high dilution

10

rate.

Pence contends that, even if misrepresentations were made, they were not of a "past or existing fact" because the collection rate frequently changed and always was somewhat unpredictable. Dkt. No. at 170 at 17. However, the BBCs were filed every day, and PNC Bank has brought forth evidence suggesting that it relied on the BBCs after they were filed. *See id.* at 4; Dkt. No. 182 at 16 (undisputed that Loan Agreements required daily filing of BBCs). Therefore, the Court concludes that there is a genuine issue of material fact regarding whether the dilution of the Disputed Accounts became a "past or existing fact" over the course of the time that they were reported as accounts receivable.

Pence further contends that the alleged misrepresentations were not detrimentally relied upon by PNC Bank. Dkt. No. 170 at 21–23. To show detrimental reliance, a plaintiff must demonstrate that he reasonably relied on the defendant's misrepresentations to his detriment. *Millennium Club, Inc. v. Avila*, 809 N.E.2d 906, 911 (Ind. Ct. App. 2004). Here, PNC Bank has brought forth evidence showing that the funds given to OCMC under the Loan Agreements would have been much less had the collectible amounts on the Disputed Accounts, rather than the accounts receivable, been reported. *See* Dkt. No. 182-26 at 7–8 (expert reports calculating collateral base with and without the Disputed Accounts). PNC Bank's evidence establishes a genuine issue of material fact as to detrimental reliance.

Lastly, Pence asks the Court to determine the issue of proximate cause. "Proximate cause is generally an issue for the trier of fact and may be decided as a matter of law only when the facts are undisputed and lead to but a single inference." *Palmer & Sons Paving, Inc. v. N. Ind. Pub. Serv. Co.*, 758 N.E.2d 550, 557 (Ind. Ct. App. 2001). For the same reason that the Court concludes an issue of material fact exists as to PNC Bank's

detrimental reliance, a conclusion as to proximate cause as a matter of law is inappropriate in this case.

Because of the genuine issues of material fact as to each element of fraud, the Court concludes that summary judgment on the fraud claim is inappropriate at this time.

## B. INDIANA CRIME VICTIM'S RELIEF ACT

PNC Bank asserts entitlement to a treble damages award under the Indiana Crime Victim's Relief Act ("ICVRA") based on deception, criminal mischief, and defrauding a financial institution. Dkt. No. 1 at ¶¶ 60–72. ICVRA provides relief to persons who suffer a pecuniary loss based on violation of the provisions of Indiana Code § 35-43. Ind. Code. § 34-24-3-1 (2010). *See also* Ind. Code. §§ 35-43-1-2 (criminal mischief), 35-43-5-3 (deception), 35-43-5-8 (fraud on financial institutions). A criminal conviction for the underlying misconduct is not necessary to maintain an action for associated ICVRA civil penalties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) (Tinder, J.). An ICVRA plaintiff must prove violation of relevant criminal prohibitions by a preponderance of the evidence. *Id.*

To establish deception, a plaintiff must show that the defendant "knowingly or intentionally ma[de] a false or misleading written statement with intent to obtain property[.]" Ind. Code. § 35-43-5-3(a)(2) (2010). To establish criminal mischief, a plaintiff must show that the defendant "knowingly or intentional cause[d] another to suffer pecuniary loss by deception[.]" Ind. Code. § 35-43-1-2(a)(2) (2010). Both deception and criminal mischief, therefore, require that the defendant himself make a misleading written statement. Although PNC Bank alleges that Pence "personally participated in . . . fraud," PNC Bank

12

has not designated any evidence that Pence made a false or misleading written statement to PNC Bank. Absent this evidence, the facts do not support ICVRA liability for either deception or criminal mischief. *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1118 (Ind. Ct. App. 2008) (denying summary judgment for deception and criminal mischief when defendants themselves made false statements on loan applications).

To establish fraud on a financial institution, a plaintiff must prove that the defendant "knowingly execute[d], or attempt[ed] to execute, a scheme or artifice . . . to obtain any of the money . . . under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises[.]" Ind. Code. § 35-43-5-8(a)(2) (2010). Although PNC Bank states in the Complaint that it is a federally chartered financial institution, PNC Bank has not provided any evidence supporting this contention. *See* Dkt. No. 1 at ¶ 60. Written documentation of federal charter status is not required to establish, but at least some admissible evidence is necessary to raise an issue of fact on this element. *See McGowan v. Miller*, 109 F.3d 1168, 1176 (7th Cir. 1997). Because PNC Bank has not brought forth any evidence of its chartered or insured status, it has failed to demonstrate a necessary element of its claim. Accordingly, since there is not a genuine issue of material fact as to PNC Bank's ICVRA claim, summary judgment is **GRANTED** for Pence on this claim.

## C. CIVIL CONSPIRACY

Based on the same conduct alleged in its fraud claim, PNC Bank also contends that Pence, along with others at OCMC, engaged in a civil conspiracy to defraud PNC Bank. Dkt. No. 1 at ¶¶ 74–76. Under Indiana law, there is no separate cause of action for civil conspiracy, only for "damages resulting from civil conspiracy" based on concerted tortious action. *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009). A plaintiff alleging civil conspiracy first must prove the tort defendant acted in concert with others to commit; then the plaintiff must prove damages resulting from that unlawful agreement. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1158 (Ind. 2002). In this case, the underlying tort is fraud. As discussed above, there are genuine issues of material fact on PNC Bank's fraud claim. Because the civil conspiracy claim is directly contingent on PNC Bank's fraud claim, the Court **DENIES** Pence's Motion for Summary Judgment as to the conspiracy claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 169) is **DENIED AS MOOT** as to Treash and **DENIED in part** and **GRANTED in part** as to Pence. Because the court requires no additional information to determine the merits of the Motion for Summary Judgment, Defendant's Request for Argument (Dkt. No. 189) is **DENIED**.

IT IS SO ORDERED this 7th day of October 2010.

*[signature]*
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached

Distribution to:

Gerald E. Burns
BUCHANAN INGERSOLL & ROONEY P.C.
gerald.burns@bipc.com

James Braden Chapman II
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
jchapman@beneschlaw.com

Kathleen A. Gallagher
ECKERT SEAMANS CHERIN & MELLOTT LLC
kgallagher@eckertseamans.com

Sandy B. Garfinkel
ECKERT SEAMANS CHERIN & MELLOTT, LLC
sgarfinkel@eckertseamans.com

Thomas Livingston
OFFICE OF THE FEDERAL PUBLIC DEFENDER
thomas_livingston@fd.org

Craig Morris McKee
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com

William L. O'Connor
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
woconnor@beneschlaw.com

Cynthia Reese
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
creese@beneschlaw.com

William H. Schorling
BUCHANAN INGERSOLL & ROONEY PC
william.schorling@bipc.com

Samantha L. Southall
BUCHANAN INGERSOLL & ROONEY PC
samantha.southall@bipc.com

Stephen S. Stallings
STALLINGS LLC
sstallings@stallings-law.com

Jana K. Strain
GEIGER CONRAD & HEAD, LLP
jana.strain@gch-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com